JUSTICE ALBIN,
concurring.
I fully concur with Justice Timpone’s thoughtful and well-reasoned opinion. I write separately to address the proposal in the *495 Chief Justice’s concurring opinion that we should align N.J.R.E. 608 with its federal counterpart.
N.J.R.E. 608 generally prohibits collateral attacks on a witness’s character for truthfulness through specific-conduct impeachment evidence. Our codified rules of evidence—in line with the historic development of New Jersey’s common law—forbid such collateral impeachment attacks for reasons of fairness and public policy. Under our evidence rules, a sexual assault victim cannot be asked whether she misrepresented her assets on a student loan application; a police officer cannot be asked whether he lied about his age on a summer employment application years earlier or plagiarized a paragraph in completing a college essay; and a defendant, on trial for aggravated assault, cannot be asked whether he misstated his income on his tax returns. That form of impeachment attack is not permitted because the probative value of such questioning is outweighed by the potential prejudice of diverting jurors from the central issues in a case—and because we do not assume that a person who lied in the past under wholly different circumstances will lie under oath at trial.
The Chief Justice’s proposal, if adopted, would allow the use of specific instances of untruthfulness—wholly unrelated to the litigation—to impeach a witness’s character for veracity. The threat of such collateral attacks could keep crime victims from coming forward and injury victims from bringing their claims. Such a threat might also keep defendants off the stand, thus depriving the jury of their testimony. It would also encourage parties to forage for impeachment evidence to launch wide-ranging attacks on a witness’s credibility.
That is why our present evidence rule N.J.R.E. 608, its predecessor evidence rule, and New Jersey’s common law never incorporated the Chief Justice’s proposal to allow specific instances of conduct as a means of impeaching a witness’s character for truthfulness. In 1991, our Supreme Court Evidence Rule Committee—in making recommendations to amend our then-evidence rules—surveyed the federal evidence rules and specifically consid *496 ered and rejected reshaping N.J.R.E. 608 to conform to federal practice.
To be sure, our current rules do not allow an incorrigibly dishonest witness a safe haven. Our rules permit the impeachment of a witness’s credibility by such means as opinion and reputation evidence, bias, prior inconsistent statements, false statements made in the matter, and prior false accusations.
The parties have not asked this Court to amend N.J.R.E. 608, nor have there been complaints from the bar about the rule. Although our rules limiting impeachment may not be perfect, they sensibly accommodate two important goals: the search for truth and the need for fairness in our criminal and civil justice system. Before tearing down our present structure, thought must be given to whether the replacement would be better.
I do not see any special justification for altering the current formulation of N.J.R.E. 608, for reasons I will now more fully explain.
I.
A.
Our rules of evidence generally prohibit impeachment of a witness’s character for truthfulness through the use of specific instances of conduct. N.J.R.E. 608(a) (“Except as otherwise provided by Rule 609 and by paragraph (b) of this rule, a trait of character cannot be proved by specific instances of conduct.”); see also N.J.R.E. 405(a) (“Specific instances of conduct not the subject of a conviction of a crime shall be inadmissible [to prove a trait of character].”). There are a few exceptions to this general rule. For example, a witness’s credibility can be impeached with prior criminal convictions, N.J.R.E. 609, or prior false accusations, N.J.R.E. 608(b), and specific instances of conduct are admissible when a party’s character for truthfulness is an essential element of a claim or defense, N.J.R.E. 405(b), such as in a defamation case. Otherwise, an attack on a witness’s character for truthfulness *497 must come in the form of reputation or opinion evidence. N.J.R.E. 405(a).
In contrast to the New Jersey approach, the federal rules of evidence permit the use of “specific instances of a witness’s conduct in order to attack or support the witness’s character for truthfulness.” Fed. R. Evid. 608(b).[1] The federal rule, however, bars the introduction of extrinsic evidence to prove the specific instance of conduct. Thus, the examiner cannot go further than posing the question and accepting the answer. For instance, the examiner may ask a witness, who is a cheating husband, whether he lied to his wife innumerable times about his faithfulness. However, on receiving a negative response, the examiner cannot not rebut the answer with extrinsic evidence.
I disagree with the Chief Justice’s view that “even a denial ... can convey pertinent information to a jury” in the absence of rebuttal evidence. Ante at 493, 163 A.3d at 340 (Rabner, C.J., concurring). Can the denial, in the example above, suggest the opposite—the husband lied to his wife? To allow an adverse inference to be drawn from the denial would mean that the question itself would be transformed into affirmative evidence. Permitting this level of speculation on a collateral issue, one so tangential to the case at hand, would surely divert the jurors’ eyes from the true issues.
The only limitation on the expansive use of specific instances of conduct to impair a witness’s character for truthfulness is Federal Rule of Evidence 403, which weighs the probative value of the *498 inquiry against its potential prejudicial effect.[2] Of course, different judges, even in similar cases, may come to different outcomes in weighing the competing Rule 403 factors, and those outcomes, if within the realm of reason, would have to be respected under an abuse-of-discretion standard.
B.
The New Jersey approach is not the product of mistake or oversight. This Court thoroughly highlighted the historical and practical basis for this State’s commitment to N.J.R.E. 608’s limited scope in State v. Guenther, 181 N.J. 129, 139-44, 151-54, 854 A.2d 308 (2004). The Guenther Court explained that we bar “the use of prior instances of conduct to attack the credibility of a witness for two essential reasons: to prevent unfairness to the witness and to avoid confusion of the issues before the jury.” Id. at 141, 854 A.2d 308. Under our current rule, we have concluded that it would not be fair that a witness must answer for his whole life and respond to long ago instances of untruthful conduct. Ibid.; see also The New Wigmore: A Treatise on Evidence: Impeachment and Rehabilitation § 3.3 (2017). We also have determined that “wide-ranging collateral attacks on the general credibility of a witness” may lead to jury confusion and distract the jury from “the true issues in the case.” Guenther, supra, 181 N.J. at 141-42, 854 A.2d 308; see also The Neiv Wigmore, supra, § 3.3. Concerns about witness fairness and jury confusion are not diminished merely because extrinsic evidence cannot be introduced to impeach the witness.
Allowing expansive collateral attacks on a witness’s credibility through prior specific conduct would likely have the unintended consequence of prompting attorneys to forage through a witness’s past, “hoping to snare some morsel of information” that can be *499 used for impeachment purposes. See State v. Hernandez, 225 N.J. 451, 466, 139 A.3d 46 (2016). Attorneys will investigate witnesses to determine whether they have made misrepresentations on job and license applications; mortgage, loan, and tax statements; and academic and professional articles, to name but a few examples. Specific instances of conduct will be admissible even though wholly collateral to the case itself.
Under the federal evidence rules, an aggravated-assault victim or a personal-injury plaintiff can be asked on cross-examination whether she misrepresented her income on a job application or a tax return seven years ago. Such prior acts of dishonesty would bear little relevance to the victim’s or plaintiffs credibility in court but likely would have an outsized effect on the jury’s evaluation of that witness. The admission of the singular incident, or incidents, of untruthfulness would allow the jury to engage in the most simplistic and dangerous assumption—once a liar, always a liar. See Richard E. Redding, Socialization by the Legal System: The Scientific Validity of a Lacanian Socio-Legal Psychoanalysis, 75 Or. L. Rev. 781, 799-800 (1996). That a witness previously misrepresented his income or work history on an employment application would hardly signify that the witness is primed to give perjured testimony in court. See id. at 800. That a witness at a younger age and under different circumstances was untruthful is not a basis for a presumption that dishonesty is a fixed personality trait of the witness. Id. at 800-01. Allowing juror speculation on such a subject will not advance the truth-seeking purpose of a trial.
One learned treatise on the subject of evidence has concluded that New Jersey’s prohibition against specific-conduct evidence on cross-examination “is arguably the fairest and most expedient” compared to other formulations of Rule 608. See 1 McCormick on Evidence § 41, at 180 (Broun ed., 6th ed. 2006). The restriction on the use of specific-conduct evidence is preferable because of “the dangers of prejudice (particularly if the witness is a party), of distraction and confusion, of abuse by asking unfounded questions, and of the difficulties ... of determining whether particular acts *500 relate to character for truthfulness.” Ibid. McCormick, therefore, suggests that our current N.J.R.E. 608 is the superior approach.
II.
Significantly, the parties have not complained about the current structure of N.J.R.E. 608, nor am I aware of critiques of N.J.R.E. 608 coming from members of the bar or academia. The present version of N.J.R.E. 608—although different from its federal counterpart—is “consistent with our own jurisprudence and values.” See Guenther, supra., 181 N.J. at 155, 854 A.2d 308; see also Biunno, Current N.J. Rules of Evidence, comment 1 on N.J.R.E. 608 (2016) (noting that N.J.R.E. 608 reflects long-established New Jersey law). In many areas of the law, in construing our State Constitution and adopting evidence and discovery rules, this Court has charted a different path than the one followed by the federal courts and many other courts. See Guenther, supra, 181 N.J. at 151-54, 854 A.2d 308. We have not hesitated to follow “a distinct minority view” when doing so is consistent with our “unique interests, values, [and] customs.”[3] See Lewis v. Harris, 188 N.J. 415, 456, 908 A.2d 196 (2006).
Our Evidence Rules Committee has not proceeded in blissful ignorance of the distinction between the New Jersey and federal approaches. More than two decades ago, the Committee reviewed the rules of evidence and recommended certain revisions to this Court. See Report of the Supreme Court Committee on the Rules of Evidence, 129 N.J.L.J. 1 (Oct. 10, 1991). At the time, the Committee recognized that N.J.R.E. 608 does not align with federal practice. See id. at 25. The Committee believed that New Jersey’s evidence rules already “afford[ ] sufficient scope for the effective impeachment of credibility.” Ibid. In preserving N.J.R.E. 608’s current formulation, the Committee recommended “re- *501 tainting] present New Jersey practice by rejecting the ... federal rule which permits limited admissibility of specific instances of conduct on cross-examination.” Ibid. The Committee observed that this rejection of the federal rule preserved the prohibition on specific-conduct evidence contained in the first formal codification of the 1967 New Jersey Rules of Evidence. Ibid.
N.J.R.E. 608’s predecessor, N.J.R.E. 22(d), provided, “evidence of specific instances of his conduct, relevant only as tending to prove a trait of his character, shall be inadmissible.” N.J.R.E. 22(d) (effective 1967). Rule 22(d), when prepared, was “representative of current New Jersey [common] law.” Report of the New Jersey Supreme Court Committee on Evidence 71 (Mar. 1963) (citing State v. De Paola, 5 N.J. 1, 73 A.2d 564 (1950)). Accordingly, N.J.R.E. 608 is “consistent in philosophy and effect” with our long-standing evidence rules. See Report of the Supreme Court Committee on the Rules of Evidence, supra., 129 N.J.L.J. at 25.
Recently, this Court reaffirmed the wisdom of this approach. In Hernandez, supra, the defendants made extensive discovery demands from the State for files relating to investigations and prosecutions in which a cooperating witness had participated, claiming their entitlement to discovery of “false and inconsistent statements made by the Witness in the unrelated investigations.” 225 N.J. at 453, 466, 139 A.3d 46. We made clear that “such statements would not be admissible under N.J.R.E. 608 because ‘evidence of specific instances of conduct—other than a prior conviction—to prove the character trait of untruthfulness is prohibited.’ ” Id. at 466-67, 139 A.3d 46 (quoting Guenther, supra, 181 N.J. at 140, 854 A.2d 308). We therefore rejected the defendants’ discovery request. Id. at 466, 139 A.3d 46.
Typically, we look for a special justification before we alter a long-standing precedent or rule. See, e.g., State v. Witt, 223 N.J. 409, 414-15, 126 A.3d 850 (2015). We have not received complaints about the operation of N.J.R.E. 608 from members of the judiciary, the bar, or the public. Nothing has changed in the twenty-five *502 years since our Evidence Rules Committee last rejected the federal formulation of Rule 608.
III.
Because I see no sound justification for abandoning this State’s common-law rule codified in N.J.R.E. 608 in favor of the federal rule, I would retain our current rule.

 Federal Rule of Evidence 608(b), in full, provides:
Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness’s character for truthfulness. But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of:
(!) the witness; or
(2) another witness whose character the witness being cross-examined has testified about.

 Federal Rule of Evidence 403 provides: “The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.”

 New Jersey stands with Illinois, Massachusetts, Oregon, and Texas in barring evidence of specific instances of conduct to impeach a witness's character for truthfulness or untruthfulness. See Ill. R. Evid. 608; Or. Rev. Stat. § 40.350(2); Tex. R. Evid. 608(b); Massachusetts Guide to Evidence § 608(b) (2017).